THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BROSHUNE SPANN, Defendant-Appellant.

First District (6th Division)    No. 1—00—4218

Opinion filed June 28, 2002.

428

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Campos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a bench trial defendant was found guilty of four counts of possession of a controlled substance with intent to deliver and sentenced to 10 years in prison. On appeal defendant contends that the Class X sentence was improper because it was based on a defective indictment; the State failed to prove the offenses were committed on a public way; the State failed to prove defendant possessed with intent to deliver the cocaine found in the apartment; and defense counsel was ineffective for not presenting various pretrial motions. We find ineffective assistance of trial counsel and reverse defendant's convictions and sentence. We remand for retrial.

## BACKGROUND

On October 18, 1999, around 11:20 p.m., Chicago police officer Michael Stack was conducting a residential safety check of the Chicago Housing Authority building at 2430 South State Street. The location was known to be an area of high narcotics activity. Upon entering the back of the building, he saw the defendant on the front steps receive an unknown quantity of United States currency from an unidentified individual in exchange for an item that defendant retrieved from inside his mouth. Where the defendant was standing was well lighted, but the vestibule that Officer Stack was coming through was dark. Officer Stack approached the defendant and observed what appeared to be a chunk of suspect crack cocaine in a plastic bag in defendant's mouth.

He told defendant to spit it out and defendant complied. Officer Stack recovered the bag and arrested defendant. Both parties stipulated that a chemist would testify the substance recovered from defendant's mouth weighed three grams and tested positive for cocaine.

Officer Stack testified that defendant told him at the police station that he resided at two addresses, one of which was apartment 302 at 2430 South State Street for which he had a key in his possession. Defendant told the officer that he paid rent there and he stayed there with his girlfriend and her child. When Officer Stack asked if defendant had anything at the apartment that he should not have, defendant answered in the negative. Officer Stack asked if defendant was willing to sign a consent-to-search form and defendant agreed. Stack entered the apartment with defendant's key and found 12 plastic bags of suspect cocaine and $1,260 in United States currency. Both parties stipulated that a chemist would testify the substance recovered from the apartment weighed 3.6 grams and tested positive for cocaine.

Defendant did not testify. The court found defendant guilty of four counts of possession of a controlled substance with intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine. Defendant was sentenced to 10 years in prison. Defendant appeals.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

■ On appeal defendant argues that his trial counsel was ineffective because he failed to present various pretrial motions. The sixth and fourteenth amendments to the United States Constitution guarantee the fundamental right of a defendant in a criminal case to be effectively assisted by counsel. U.S. Const., amends. VI, XIV. In *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the United States Supreme Court established a two-prong test that a defendant must meet in order to prove that trial counsel was ineffective. *Strickland* requires the defendant to show deficient performance and that the deficient performance prejudiced defendant. *Strickland*, 466 U.S. at 687, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. In *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984), the Illinois Supreme Court adopted the *Strickland* rule that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" and that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 686, 694, 80 L. Ed. 2d at 692-93, 698, 104 S. Ct. at 2064, 2068.

■ Under the first prong of the *Strickland* test, the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The reviewing court, without engaging in hindsight, must presume that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. Evaluation of counsel's conduct by a reviewing court cannot properly extend into areas involving the exercise of judgment, discretion or trial tactics. *People v. Mitchell*, 105 Ill. 2d 1, 12 (1984), *cert. denied*, 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857 (1985). Effective assistance of counsel refers to competent, not perfect, representation. *People v. Odle*, 151 Ill. 2d 168, 173 (1992). The defendant is required to overcome the strong presumption that the challenged action was the product of sound trial strategy and not the result of incompetence. *People v. Harris*, 129 Ill. 2d 123, 156 (1989). Defense counsel, at a minimum, must act as an advocate for the accused by subjecting the State's case to meaningful adversarial testing. *People v. Shelton*, 281 Ill. App. 3d 1027, 1037 (1996).

■ Under the second prong of the *Strickland* test, the defendant must show there is a reasonable probability that, but for counsel's deficient performance, the results of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Specifically, the defendant must show that defense counsel's deficiencies so prejudiced the defendant as to deprive him of a fair trial with a reliable result. *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989).

■ Defendant argues that his trial attorney's failure to present various motions was ineffective assistance of counsel. We note the record in this case consisted of eight pages of direct examination of Officer Stack by the State, followed by 2½ pages of cross-examination by defense counsel consisting of 14 questions, and a 1½-page stipulation by both the State and defense to the testimony of the forensic scientist that the substance inventoried tested positive for cocaine. Defense counsel presented no pretrial motions, no opening statement, no witnesses, and no evidence. Defense counsel made no objections. The issue of ineffective assistance of counsel is to be determined from the totality of counsel's conduct, not from isolated incidents. *Mitchell*, 105 Ill. 2d at 15. Keeping these principles in mind, we examine the totality of trial counsel's conduct.

## A. MOTION TO QUASH ARREST AND SUPPRESS EVIDENCE

During trial, Officer Stack testified that in connection with a

residential safety check of the building at 2430 South State Street, he observed the defendant on the front steps of the Ickes Home Development at that address. As to the observations which resulted in defendant's arrest, he testified on direct examination by the State as follows:

"THE STATE: As you observed the defendant, what did you see?

OFFICER: I observed the defendant receive a quantity of United States currency. In turn he took an item from his mouth and tendered it to an individual who then walked into a crowd of people and appeared to have gone northbound from the location.

THE STATE: After you made that observation, what did you do?

OFFICER: Waited a couple of seconds and then approached Mr. Spann.

THE STATE: When you approached Mr. Spann, did you observe anything at that time?

OFFICER: Yes, I was able to observe what appeared to be a large chunk of a white rock substance suspect crack cocaine in Mr. Spann's mouth, and I ordered him to spit that out because it was what I believed to be crack cocaine.

THE STATE: When you ordered him to spit out that item, did he in fact do that?

OFFICER: Yes

THE STATE: You recovered that item?

OFFICER: Yes.

THE STATE: Judge, it will be stipulated by and between the parties that that item was subsequently inventoried under 2244133 and submitted to the Illinois State Police. So stipulated?

DEFENSE COUNSEL: Yes

THE STATE: After the defendant spit that item out, did you place him under arrest?

OFFICER: Yes, ma'am."

Officer Stack further testified that defendant admitted at the police station to residing at apartment 302, had the apartment key in his possession and consented to the search of the apartment which yielded 3.6 grams of cocaine and $1,260 in United States currency.

The complete cross-examination of Officer Stack is as follows:

"DEFENSE: Officer Stack, you indicated that you were doing a safety check; is that right?

OFFICER: Yes.

DEFENSE: And you indicated that you saw a person approach my client and that person gave my client money; is that your testimony?

OFFICER: Yes, sir.

DEFENSE: From your vantage point as you were observing this,

you couldn't tell the amount of money that was tendered to my client; is that correct?

OFFICER: That's correct.

DEFENSE: You couldn't see exactly what if anything my client gave to that person; could you?

OFFICER: No. He just picked something out of his mouth and gave it to him.

DEFENSE: At any time did you attempt to stop the person that you say you saw approach my client?

OFFICER: No.

DEFENSE: At some point you indicated that you walked up to my client and you asked him to spit out what was in his mouth; is that correct?

OFFICER: Yes, sir.

DEFENSE: Did you inventory what was recovered at that time?

OFFICER: Yes, sir.

DEFENSE: You indicated that at some point you asked my client to sign a consent to search form; is that correct?

OFFICER: Yes, sir.

DEFENSE: And you went to 2430 South State, Apartment 302; is that right?

OFFICER: Yes, sir.

DEFENSE: Did you learn that as part of your investigation that my client was not the lease holder at that address; is that correct?

OFFICER: Your client said he paid rent there and he stayed there with his girlfriend and a young boy.

DEFENSE: Did you recover any utility bills bearing my client's name?

OFFICER: No, sir.

DEFENSE: Did you recover a lease bearing my client's name?

OFFICER: No, sir.

DEFENSE: You didn't inventory as part of your investigation when you went to Apartment 302 any male clothing; did you?

OFFICER: I didn't inventory any clothing. I just inventoried the key that Mr. Spann gave me.

DEFENSE: You never saw Mr. Spann inside that Apartment 302; did you?

OFFICER: No, sir.

DEFENSE: I don't have any further questions, Judge."

■ The decision whether to bring a motion to quash arrest and suppress evidence is considered trial strategy, and trial counsel enjoys the strong presumption that failure to challenge the validity of the defendant's arrest or to move to exclude evidence was proper. *People v. Rodriguez*, 312 Ill. App. 3d 920, 925 (2000). To overcome that presumption, the defendant must demonstrate a reasonable probability that

the motion would have been granted and that the outcome of the trial would have been different. *Rodriguez*, 312 Ill. App. 3d at 925. Reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

A police officer may make a valid investigatory stop absent probable cause for an arrest, provided that the officer's decision is based on specific, articulable facts that warrant the investigative stop. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 889, 906, 88 S. Ct. 1868, 1879-80 (1968). The stop is proper if a person of reasonable caution believes the action taken was justified knowing the facts available at the time of the stop. *People v. Rivera*, 272 Ill. App. 3d 502, 504-05 (1995).

Here, at 11:20 p.m. Officer Stack knew the following: (1) the location where he was conducting a residential safety check of the Ickes Home Development building at 2430 South State Street was an area of high narcotics activity; (2) defendant was on the front steps of that building; (3) defendant received money from an individual, took an item from his mouth, and gave it to that individual, who then disappeared into a crowd of people; (4) he could not see what the defendant gave to that individual; and (5) he could not tell the amount of money that individual gave the defendant.

There was no challenge by defense counsel by way of a motion to suppress or by cross-examination at trial of Officer Stack's ability or opportunity to observe the single transaction he described. There was no cross-examination as to the nature, extent, or duration of that observation. Moreover, the record does not reflect Officer Stack's experience regarding narcotics investigations or arrests. Officer Stack never testified that, based on his experience conducting narcotics surveillance, he suspected the defendant had been involved in a narcotics transaction. There was no testimony by Officer Stack that during previous narcotics surveillance he observed the sale of drugs take place in the manner described here, with the seller storing the drugs in his mouth. There was no testimony by Officer Stack that previously he had seen similar transactions that led to arrests for unlawful delivery of a controlled substance. See *People v. Stewart*, 217 Ill. App. 3d 373, 376 (1991). Officer Stack admitted that he did not see what was transferred from defendant to the other unidentified person. Officer Stack failed to testify as to what factors he found significant regarding his decision to approach defendant and conduct further investigation. See *People v. Steels*, 277 Ill. App. 3d 123, 129 (1995). Arguably, Officer Stack's testimony lacked specific, articulable facts which justified an investigative *Terry* stop and search.

This court has previously stated that the sole legal justification for

a "search" incident to a *Terry* stop is the protection of the officer and others nearby, not to gather evidence. *People v. Morales*, 221 Ill. App. 3d 13, 17-18 (1991). Here, the officer testified that he ordered defendant to spit out what was in his mouth "because it was what [he] believed to be crack cocaine." There was no testimony that the officer was concerned about his safety, the safety of others, or that what he believed to be cocaine would be destroyed when he ordered defendant to spit out what was in his mouth.

In connection with this testimony, defense counsel did not test the credibility of Officer Stack's statement that he observed what he believed to be cocaine in defendant's mouth. There was no challenge by defense counsel to Officer Stack's ability or opportunity to observe the contents inside defendant's mouth. There was no cross-examination regarding the nature, extent, or duration of that observation. We are mindful that contraband in plain view of a police officer, who has a right to stop a subject or a right to be in a position to have that view, is subject to seizure and may be introduced into evidence. *People v. Jackson*, 149 Ill. App. 3d 156, 159 (1986). Here, the record does not indicate whether defendant was standing with his mouth gaping wide open, exposing the white substance to Officer Stack's plain view, or whether he voluntarily revealed the presence of the white substance to Officer Stack in some other way. Considering the fact that the white substance was illegal contraband, either of these actions would be curious and contrary to common sense and everyday experience. The circumstances surrounding Officer Stack's observation of the contents inside defendant's mouth were never tested by a motion to quash arrest and suppress evidence or by cross-examination.

The State's entire case was based on the testimony of Officer Stack. The testimony of Officer Stack was not so clear and convincing that it would have been futile for defense counsel to have challenged it. The testimony, as previously noted, raised several legal and factual questions. Defense counsel through cross-examination and closing argument could have made a strong case that the circumstances surrounding defendant's arrest were not as Officer Stack had described.

In *People v. Love*, 318 Ill. App. 3d 534 (2000), *rev'd*, 199 Ill. 2d 269 (2002),[1] the officer observed a pedestrian hand money to a bicyclist. The bicyclist directed the pedestrian toward the defendant, who removed an item from her mouth and handed it to the pedestrian. The officer approached the defendant and asked her name. The defendant

---

[1]In the exercise of the supreme court's supervisory authority, we were directed to vacate our original opinion in this case No. 1—00—4218 and reconsider our judgment in light of *People v. Love*, 199 Ill. 2d 269 (2002).

had difficulty answering so the officer ordered her to spit out what was in her mouth. The defendant complied and spit out 16 plastic bags, which the officer testified he believed contained cocaine. The defendant argued that the trial court erred in finding that the officer engaged in a proper *Terry* search when he told the defendant to spit out what she had in her mouth. *Love*, 318 Ill. App. 3d at 536.

In *Love*, the State, similar to its position in this case, argued that the officer never "searched" defendant. *Love*, 318 Ill. App. 3d at 537. In rejecting that position, the appellate court in *Love* noted that people have a legitimate privacy interest in protecting themselves from "searches involving intrusions beyond the body's surfaces." *Love*, 318 Ill. App. 3d at 537, citing *Schmerber v. California*, 384 U.S. 757, 769-70, 16 L. Ed. 2d 908, 919, 86 S. Ct. 1826, 1835 (1966). The appellate court in *Love* concluded that the officer intruded upon defendant's body by ordering her to spit out what was in her mouth and such conduct was a sufficient intrusion upon defendant's privacy interest to constitute an unlawful search under the fourth amendment. *Love*, 318 Ill. App. 3d at 538.

The supreme court reversed the appellate court, finding that when the officer

> "approached the defendant to ask her name and received a garbled response, Officer Olson could have reasonably concluded, based on the totality of the circumstances, that the defendant was concealing drugs in her mouth. Reasonable suspicion ripened into probable cause to arrest, and Officer Olson's order to the defendant was a search incident to a lawful arrest." *Love*, 199 Ill. 2d at 280.

In *Love*, unlike this case, the arresting officer did not claim to have viewed the contraband in the defendant's mouth, but, rather, after asking her name and receiving a garbled response, he ordered the defendant to spit out what was in her mouth. Here, Officer Stack claims to have observed "what appeared to be a large chunk of a white rock substance suspect cocaine in Mr. Spann's mouth" and "ordered him to spit that out because it was what [Officer Stack] believed to be crack cocaine." The various observations claimed to have been made by Officer Stack before and after he approached defendant were never tested by a motion to suppress or by cross-examination at trial. That fact distinguishes this case from *Love*. In *Love*, the defense presented a motion to suppress the evidence. The credibility of the defendant and the police officer in *Love* was tested during the motion to suppress and during trial. Here, defense counsel failed to test the credibility of the police officer either by a motion to suppress or by cross-examination at trial. Defense counsel failed to challenge during a motion to suppress or during trial the testimony of Officer Stack that the

plastic bag inside defendant's mouth was in fact in plain view. *Jackson*, 149 Ill. App. 3d at 159. Defense counsel failed to test by way of cross-examination either during trial or during a motion to suppress the circumstances surrounding defendant's arrest, including the various observations made by Officer Stack from the time he first noticed defendant up until the point he placed defendant under arrest.

Unlike this case, in *Love*, the totality of the circumstances relied upon by the supreme court in finding that the search was incident to a lawful arrest had been challenged by a motion to suppress, cross-examination and the defendant's testimony. In *Love*, both the defendant and police officer testified. The supreme court in *Love* noted that defendant's version of the events which led to her arrest differed "wildly" from the police officer's version. *Love*, 199 Ill. 2d at 272. The supreme court in *Love* noted that the "trial court found that Officer Olson's testimony was more credible than that of the defendant." *Love*, 199 Ill. 2d at 275. Here, unlike *Love*, the credibility of Officer Stack was not tested by way of a motion to quash arrest and suppress evidence or by cross-examination. The defendant's right to confront witnesses against him through cross-examination is guaranteed by both the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const 1970, art. I, § 8. The record in this case reflects no challenge by way of a motion to suppress or cross-examination to the credibility of the State's only witness. The record reflects no challenge to the circumstances surrounding defendant's arrest or surrounding Officer Stack's observation of the contents inside defendant's mouth immediately before Stack arrested defendant.

We are well aware that in order to avoid the " 'distorting effects of hindsight' " reviewing courts indulge in a " 'strong presumption' " that defense counsel's performance " '[fell] within the wide range of reasonable professional assistance.' " *People v. Patten*, 240 Ill. App. 3d 407, 413 (1992), quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. However, Illinois courts of review have found ineffective assistance of counsel, as opposed to trial strategy, when the pretrial motion that counsel failed to present was defendant's strongest defense or "patently meritorious." *People v. McPhee*, 256 Ill. App. 3d 102, 107 (1993).

Regarding that principle, we find *People v. Stewart*, 217 Ill. App. 3d 373 (1991), instructive. In *Stewart*, two police officers observed two men talking on the sidewalk. They observed one man hand the other man an unidentified object. When the officers approached, the men ran. The officers stopped the two men and found cocaine in the defendant's possession. The *Stewart* court found that the question of probable cause was "a close one" and the failure to file a motion to

suppress could not have been "trial strategy" where defendant's only defense was to contest the arrest. *Stewart*, 217 Ill. App. 3d at 376.

■ Here, one of defendant's viable defenses was to contest the legality of the arrest. We note that, had the motion to quash arrest and suppress evidence succeeded, evidence needed for the State to prove possession with intent to deliver would have been eliminated from consideration by the trial court. We find the prejudice prong of the *Strickland* test satisfied because, based on the totality of defense counsel's conduct, the deficient performance of defense counsel undermined confidence in the outcome of the trial. Our holding is limited to the conclusion that a motion to quash arrest and suppress evidence would have had a reasonable probability of success. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. We leave for resolution by the trial court the question as to whether the State, based upon the totality of the circumstances, will prevail on a motion to quash arrest and suppress evidence.

Defendant further contends that trial counsel provided ineffective assistance by failing to present motions to suppress the key to the apartment, the consent to search, the cocaine found in the apartment, and defendant's statements regarding renting and using the apartment. The importance of the statements, the key and the cocaine recovered from the apartment in proving the element of intent to deliver was noted by the trial court in reaching the conclusion that defendant was guilty. In response to defense counsel's closing argument that there was insufficient evidence of intent to deliver, the trial court stated as follows:

> "[Defense counsel], I would normally agree with you with regard to the possession with intent issue if all I heard today was that the officer saw what he believed was one transaction, but taking the totality of the circumstances of the event that occurred on that night, not only the transaction that was observed by the officer which is unrefuted but the recovery of more narcotics packaged in a way that we know anybody who works here knows is used to sell on the street together with the recovery of $1200, I believe the State has established that intent element.
>
> With regard to the possession, the constructive possession or control of the apartment, what I have before me is an unrefuted statement by the officer that Mr. Spann said he not only stayed there, but he paid rent and stayed with his girlfriend and her kid on occasions.
>
> Further he had a key to the apartment which certainly is indicia of control and residence.

Based on the unrefuted evidence that I heard, I feel I have no choice but to find the defendant guilty as charged."

One of the ways for defendant to successfully suppress the key, the consent to search, the cocaine found in the apartment and defendant's statements was to demonstrate that his arrest was unlawful and the evidence was the fruit of the arrest. *People v. Williamson*, 319 Ill. App. 3d 891, 897-98 (2001). For the reasons previously discussed, the circumstances surrounding defendant's arrest raise questions concerning its legality. We conclude that the motion to quash arrest and suppress evidence would have had a reasonable probability of success. We make no determination regarding defendant's ultimate success on such a motion.

■ Regarding the statements made by defendant, if defendant's arrest was unlawful, the question then arises whether defendant's subsequent statements to the police were obtained by exploitation of the illegality of the arrest. *People v. Foskey*, 136 Ill. 2d 66, 85 (1990). To determine whether there is a reasonable probability that defendant's statements were obtained by exploitation of the illegality of the arrest and would have been suppressed as a "fruit of the poisonous tree," we must apply the test established in *Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975). The factors to be considered in order to determine whether the confession was a product of the arrest are the temporal proximity of the arrest and the statements, the presence of intervening circumstances, and the purposefulness and flagrancy of the alleged official misconduct. *Brown*, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62.

■ Applying the *Brown* factors to the facts of this case, we conclude that there is a reasonable probability that a motion to suppress statements as the result of an illegal arrest would have been successful. Defendant made the incriminating statements regarding residency immediately after he was brought to the police station, and there were no intervening circumstances. He told the officer that he resided at two addresses, one of which was apartment 302 at 2430 South State Street. He told the officer that he paid rent there and he stayed there with his girlfriend and her child. He gave the officer a key to that apartment. The key and those statements elicited from defendant arguably could be found to have been the result of "an expedition for evidence." *Brown*, 422 U.S. at 605, 45 L. Ed. 2d at 428, 95 S. Ct. at 2262. We stress, however, that we do not resolve the question of whether such a motion to suppress statements would have been granted. We limit our finding to the conclusion that, based on this record, a motion to suppress statements would have had a reasonable probability of success.

In the alternative, a lawful arrest would not preclude a motion to suppress the consent to search, the defendant's statements, the key and the cocaine found in the apartment based on voluntariness. Where the arrest is lawful, in order to successfully challenge the consent to search and suppress defendant's statements, the defendant is required to demonstrate that neither the consent to search nor the statements were given voluntarily. *People v. Williams*, 181 Ill. 2d 297, 309 (1998). Voluntariness of consent to search, as well as the voluntariness of a defendant's statements, is determined by consideration of the totality of the circumstances. *People v. Wegman*, 101 Ill. App. 3d 634, 637 (1981). Factors to consider when determining voluntariness include the defendant's age, education, and intelligence, the length of the detention and the duration of the questioning, whether the defendant was advised of his constitutional rights, and whether the defendant was subjected to any physical mistreatment. *People v. Brown*, 169 Ill. 2d 132, 144 (1996).

Here, the record does not reflect that defendant was advised of his *Miranda* rights at any time before consenting to the search of the apartment or before producing the key or making the incriminating statements regarding paying rent and staying at the apartment. We note that Officer Stack testified that defendant agreed to sign the consent-to-search form, but there was no testimony that defendant ever read the consent form or had the form read to him. The voluntariness of the consent to search and the voluntariness of the statements was never explored because defense counsel made no motion regarding the consent to search the apartment or the defendant's statements. The test for voluntariness includes whether the statement or consent was given freely, without compulsion or inducement, and whether defendant was informed of his constitutional rights. *People v. Martin*, 102 Ill. 2d 412, 427 (1984). The record does not indicate that defendant was informed of his constitutional rights. The record reflects no evidence of the circumstances surrounding the consent to search and the statements given by defendant.

Here, we find that, based on the totality of the circumstances, the failure to present a motion to suppress the key, cocaine, consent to search, and the statements made by defendant was not effective representation by defense counsel. For the reasons previously discussed, the record raises questions as to whether the key, cocaine, statements, and consent to search were subject to suppression. The deficient representation prejudiced defendant because had this evidence been suppressed, defendant could have successfully defeated the element of intent to deliver and thereby reduced his criminal liability. The trial judge indicated that had the evidence been limited to

the one transaction on the street, he would have agreed that there was insufficient evidence of intent to deliver.

## B. MOTION TO DISMISS INDICTMENT

In addition, there were other trial errors that cast doubt on the effectiveness of defense counsel during the entire proceeding and undermine confidence in the outcome of the trial. A motion could have been made to dismiss two counts of the indictment based on failure to satisfy strict statutory pleading requirements. Counts III and IV of the four-count indictment charged defendant with Class 1 possession of controlled substance with intent to deliver. The first two counts charged defendant with possession of controlled substance with intent to deliver and tracked language from section 407(b)(1) of the Illinois Controlled Substances Act (Act), which provided a Class X penalty. See 720 ILCS 570/407(b)(1) (West 1998). However, the first two counts referenced a violation of section 401(c)(2) in the indictment, which provided only a Class 1 penalty. See 720 ILCS 570/401(c)(2) (West 1998). Although the aggravating factor requiring the offense to be committed on a public way within 1,000 feet of Chicago Housing Authority property was charged in the indictment, the incorrect section and subsection alleging a Class 1 rather than a Class X felony were indicated in the body of the first two counts of the indictment. Defendant did not object in the trial court to the erroneous citations, which alleged incorrectly a Class 1 rather than a Class X violation.

Defendant raised this issue for the first time on appeal. The point in time at which the indictment is attacked determines what standard the indictment must satisfy in order to survive dismissal. When an indictment is attacked for the first time on appeal, the standard is whether the indictment informed the defendant of the offense charged with sufficient specificity to prepare his defense and plead a resulting conviction as a bar to future prosecutions based on the same conduct. *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991); *People v. Edmonds*, 325 Ill. App. 3d 439, 443 (2001). If the indictment is attacked before trial, the indictment must strictly comply with the pleading requirements of the Code of Criminal Procedure of 1963. 725 ILCS 5/111—3(a) (West 1998); *Thingvold*, 145 Ill. 2d at 448. Defense counsel, by failing to bring a motion to dismiss the indictment before trial, deprived defendant of the benefit of the indictment being required to satisfy the strict statutory pleading standard.

Rather than strictly satisfying statutory pleading requirements, the State was only required to satisfy the less stringent standard because the indictment was attacked for the first time on appeal. Under that standard the State is required only to demonstrate

that the indictment informed the defendant of the offense charged with sufficient specificity to prepare his defense and plead any resulting conviction as a bar to future prosecutions based on the same conduct.

There was a further defect in the indictment beyond the reference to the incorrect provision of the Act. This defect was substantive in nature. Defendant was found guilty of possession with intent to deliver cocaine found in his apartment. However, both count I and count II alleged possession of cocaine with intent to deliver "on a public way within 1000 feet of the real property comprising a residential property owned, operated and managed by a public housing agency, the Chicago Housing Authority." Each count used precisely the same language. Defendant's apartment was not located on a public way, but located inside the Chicago Housing Authority building. Neither of the first two counts of the indictment referenced the correct language of the enhanced penalty provision under section 407(b)(1) that the defendant violated "subsection (c) of Section 401 in any *** residential property owned, operated and managed by a public housing agency." 720 ILCS 570/407(b)(1) (West 1998). No motion alleging this substantive defect was ever made.

Regarding that defect, we find *People v. Jones*, 288 Ill. App. 3d 293 (1997), instructive. In *Jones,* the court addressed whether the term "on a public way" is an essential element under section 407(b)(2) for charging the enhanced crime under section 401(d). *Jones,* 288 Ill. App. 3d at 296-98. The court in *Jones* found that "there are two relevant portions to the enhancements in section 407(b)(2), namely, whether the violation of section 401(d) occurred: (1) in 'any school *** the real property comprising any school[,] *** public housing *** or public park' or (2) 'on any public way within 1,000 feet of the real property comprising any school[,] *** public housing *** or public park.' " *Jones*, 288 Ill. App. 3d at 298. *Jones* held that the term "on a public way" is an essential element under section 407(b)(2) for purposes of charging an enhanced crime under section 401(d) of the Illinois Controlled Substance Act. *Jones,* 288 Ill. App. 3d at 298; see also *People v. Carter*, 297 Ill. App. 3d 1028, 1032 (1998) (following *Jones,* the court held the "on any public way" element is essential to offense and failure to allege it is fatal to charge; State agreed count lacking that language is void).

Using a similar analysis, for purposes of drafting a legally sufficient indictment in this case, the relevant portions to the enhancements in section 407(b)(1) include whether the violation of section 401(c) occurred: (1) "in any *** residential property owned, operated and managed by a public housing agency," or (2) "on any public way

within 1,000 feet of the real property comprising any *** residential property owned, operated and managed by a public housing agency." 720 ILCS 570/407(b)(1) (West 1998).

Where, here, the defendant was found guilty of possessing with intent to deliver cocaine recovered from his apartment on Chicago Housing Authority property, the argument can be made that one count of the indictment was fatally defective because, for purposes of enhancing the offense to a Class X offense, in connection with the cocaine recovered from the apartment, the indictment incorrectly charged the element of "public way" when in fact the enhancing element was the fact that defendant's 401(c) violation occurred "in *** residential property owned, operated and managed by a public housing agency." 720 ILCS 570/407(b)(1) (West 1998).

By way of a motion to dismiss the indictment it could have been argued that in connection with the cocaine recovered from inside the apartment, the term "in any *** residential property owned, operated and managed by a public housing agency" was an essential element under section 407(b)(1) for purposes of charging an enhanced crime under section 401(c), and its absence from the indictment was fatal to the count based on the criminal activity which occurred inside the apartment. The trial court could have found that the term "in *** residential property owned *** by a public housing agency" was an element essential to the offense, the count lacking that language was void, and the failure to allege it was fatal to that count, thereby eliminating defendant's Class X conviction for the conduct alleged in that count. We have previously noted the weight the trial court gave to the evidence found in the apartment. The trial court relied on the evidence in the apartment as the basis for concluding that defendant had committed the offense of possession with the intent to deliver. Had the count in the indictment regarding the conduct in the apartment been eliminated from consideration by the trial court, defendant's criminal liability would have been reduced. Failure to move to dismiss that count demonstrated trial counsel's deficiency which prejudiced defendant.

Based on these defects in the indictment, we find defense counsel was ineffective for failing to present a motion to dismiss various counts of the indictment. Such a motion would have had a reasonable probability of success. We do not, however, resolve the question of whether that motion would have been granted.

## C. CLOSING ARGUMENT

■■ Finally, we note that in closing argument, while defense counsel indicated that the record was insufficient to support a finding

of intent to deliver, defense counsel misstated the evidence and conceded defendant's guilt regarding possession of a controlled substance. Specifically, defense counsel summarized Officer Stack's testimony as follows:

"The officer's testimony is that when he approached my client, my client spat from his mouth an item that he recovered. We would concede based on that part of his testimony that my client possessed narcotics, but I believe the record before this Court at this time is insufficient to support a finding of with intent."

That argument completely overlooked the fact that the defendant did not simply spit the item from his mouth but, rather, was ordered to do so by Officer Stack. That order was based on alleged observations made by Officer Stack, untested by cross-examination and not challenged in a motion to quash arrest and suppress evidence. The circumstances surrounding the observations made by Officer Stack before he ordered the defendant to spit out what was in his mouth were never explored by defense counsel, either by way of a motion to quash arrest and suppress evidence or during cross-examination of Officer Stack. As previously noted, these facts distinguish this case from *People v. Love.* In *Love*, the totality of the circumstances relied upon by the supreme court in finding that the search was incident to a lawful arrest had been challenged by a motion to suppress evidence, cross-examination and the defendant's testimony.

Moreover, defense counsel went on to concede defendant's guilt for possession of narcotics. While failing to contest the charge of possession with intent to deliver by presenting the previously discussed motions and failing to challenge the only prosecution witness, defense counsel nevertheless conceded that defendant was guilty of possession of narcotics. That concession was made regardless of the fact that defendant entered a plea of not guilty and did not testify. The record does not reflect defendant knowingly and intelligently consented to this approach. We recognize that the failure to show defendant's consent to counsel conceding defendant's guilt is not *per se* ineffective when counsel presents a strong defense to the remaining charges. *People v. Johnson*, 128 Ill. 2d 253, 269 (1989). Here, the concession to guilt was made; however, for the reasons previously discussed the record fails to reflect a strong defense or effective challenge to the possession with intent to deliver charge.

We note that the competence of defense counsel is to be determined "from a consideration of the totality of counsel's conduct, not isolated incidents." *People v. McKendrick*, 138 Ill. App. 3d 1018, 1025-26 (1985), citing *Mitchell*, 105 Ill. 2d 1. We are mindful that a defendant is entitled to competent, not perfect, representation. *People v. Eddmonds*,

101 Ill. 2d 44, 69 (1984). In making a determination of prejudice, the court must examine the totality of the circumstances. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

A review of the record demonstrates that defense counsel did not test the credibility of Officer Stack, the only witness offered by the prosecution, and did not attack the strength of the evidence presented. Defense counsel made no objections at trial. Defense counsel failed to present a motion to dismiss the indictment, quash the arrest, suppress evidence, suppress statements, or contest defendant's consent to search. As previously noted, even if a motion to quash the arrest had failed, that fact would not have precluded a motion to suppress the consent to search, the defendant's statements, the key and cocaine found in the apartment. Defense counsel conceded defendant was guilty of possession of a controlled substance in his closing argument and the record reflected no consent by defendant to that approach. Defense counsel failed to make an opening statement, called no witnesses, presented no evidence, and conducted less than a 2$^1$/$_2$-page cross-examination of the State's only witness, Officer Stack. Most of the cross-examination simply repeated the testimony of Officer Stack from his direct examination; it was not thorough, vigorous, or effective.

While these types of motions and this type of conduct have been considered to be matters of trial strategy, we cannot conclude, after reviewing the totality of defense counsel's conduct in this case, that these decisions were valid trial strategy. For the reasons previously discussed, each of these motions had a reasonable probability of success. Defense counsel, at a minimum, failed to act as a true advocate for the defendant and failed to subject the State's case to meaningful adversarial testing. Based on the cumulative impact of the ineffective assistance of counsel, we conclude defendant was prejudiced. The deficient performance of defense counsel was sufficient to undermine confidence in the outcome of the trial. We reverse and remand for further proceedings consistent with this opinion.

## II. SUFFICIENCY OF EVIDENCE

■■■ For purposes of double jeopardy, we address the sufficiency of the evidence and the arguments defendant raises regarding evidence sufficiency. *People v. Digirolamo*, 179 Ill. 2d 24, 42 (1997). In reviewing the sufficiency of the evidence to support a criminal conviction, a reviewing court must determine whether the evidence, viewed in the light most favorable to the prosecution, could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *People v. Collins*, 106

Ill. 2d 237, 261 (1985). The trier of fact is to assess the credibility of the witnesses, the weight of the evidence, and the inferences to be drawn therefrom. *People v. Brown*, 185 Ill. 2d 229, 250-51 (1998). Discrepancies in testimony do not necessarily destroy witness testimony, but go to the weight to be afforded that testimony. *People v. Tirado*, 254 Ill. App. 3d 497, 513 (1993).

We are mindful that, in a bench trial, the trial judge has the responsibility to determine the credibility of the witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidentiary record. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Accordingly, such determinations are granted substantial deference on review and we may not substitute our judgment for that of the trial judge on these matters. *People v. Banks*, 287 Ill. App. 3d 273, 285 (1997).

Defendant contends that the evidence was insufficient to prove that defendant was in possession of the drugs found in the apartment. Possession of a controlled substance may be constructive, as long as the State can prove that defendant had the intent and ability to maintain control over the substance. *People v. Brown*, 277 Ill. App. 3d 989, 997 (1996). Proof of a defendant's control may be demonstrated circumstantially by showing that defendant was aware of the presence of the narcotics at the time they were discovered. *Brown*, 277 Ill. App. 3d at 998.

The facts that defendant stayed in the apartment, paid rent there, and possessed a key to the apartment demonstrate that defendant had possession of the drugs found in the apartment. Based on the record, there was sufficient evidence to prove that defendant was in possession of the drugs found in the apartment.

Defendant next argues that the evidence was insufficient to prove that there was intent to deliver the drugs found in the apartment. In *People v. Robinson*, 167 Ill. 2d 397, 408 (1995), our supreme court noted that intent to deliver is usually proven through circumstantial evidence because direct evidence of intent rarely exists. A variety of factors have been considered as probative of intent to deliver.

> "Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption (*People v. Berry* (1990), 198 Ill. App. 3d 24), the high purity of the drug confiscated (*People v. Torres* (1990), 200 Ill. App. 3d 253), the possession of weapons (*People v. Dockery* · (1993), 248 Ill. App. 3d 59), the possession of large amounts of cash (*People v. Jones* (1991), 215 Ill. App. 3d 652), the possession of police scanners, beepers or cellular telephones (*People v. Lecour* (1988), 172 Ill. App. 3d 878; *People v. Bradford* (1993), 239 Ill. App.

3d 796), the possession of drug paraphernalia (*People v. McDonald* (1992), 227 Ill. App. 3d 92) and the manner in which the substance is packaged (*People v. Banks* (1992), 227 Ill. App. 3d 950)." *Robinson*, 167 Ill. 2d at 408.

Mindful of these factors, in reviewing this record, including the direct and circumstantial evidence, we find sufficient evidence probative of intent to deliver. The drugs found inside the apartment were packaged separately and found alongside a large amount of money. Based on the record, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of possession with intent to deliver.

Officer Stack observed defendant on the steps of the apartment building at 2430 South State Street. He saw defendant receive money from an individual in exchange for an item defendant retrieved from his mouth. Officer Stack recovered a bag that was inside defendant's mouth which contained a substance later confirmed to be cocaine. The defendant told the officer that he stayed in an apartment in that building. Using a key given to him by the defendant, Officer Stack recovered 12 separate packets of cocaine and $1,260 in United States currency from the apartment.

Based on a complete review of the record, we conclude that the evidence viewed as a whole and in a light most favorable to the State is sufficient to prove defendant's guilt for the charged offenses beyond a reasonable doubt. Therefore, principles of double jeopardy do not bar defendant's retrial. *People v. Porter*, 168 Ill. 2d 201, 215 (1995). We note that we have made no finding as to defendant's guilt that would be binding on retrial. *People v. Jones*, 175 Ill. 2d 126, 134 (1997).

## CONCLUSION

Whether any of the evidence will survive the motions we have previously discussed remains to be determined upon remand. In the context of this case, where defense counsel failed to challenge the indictment, failed to move to quash arrest, failed to move to suppress evidence, failed to conduct cross-examination that challenged the credibility of the State's only witness and conceded defendant's guilt in closing argument on the lesser included offense with no competent challenge to the more serious charges, we find ineffective assistance of counsel.

We reverse defendant's convictions and sentence. We remand for further proceedings consistent with this opinion.

Reversed and remanded.

GALLAGHER, P.J., and BUCKLEY, J., concur.