# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Miller, 2013 IL App (1st) 110879**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY MILLER, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0879 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A new trial was awarded to defendant in a prosecution for aggravated possession of a stolen motor vehicle where the trial court committed plain error in stating that the "owner" of the car had testified that the steering column had been peeled and in excluding as inadmissible hearsay her testimony that the vehicle had been sold, since the record showed no such testimony and the testimony about the sale was only offered to show the witness's state of mind; furthermore, the errors prejudiced defendant, the evidence was close and was not inconsistent with defendant's claim that he was a *bona fide* purchaser of the vehicle, and defense counsel was ineffective in failing to seek the suppression of an inculpatory statement defendant made without *Miranda* warnings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-C-661233; the Hon. Frank Zelezinski, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Kathleen Hill, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Brooke N. Schneider, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. |
| | Justice Hall concurred in the judgment and opinion. |
| | Presiding Justice Lampkin dissented, with opinion. |

## OPINION

¶ 1    Following a bench trial, defendant Rodney Miller was convicted and sentenced to 19 years in the Illinois Department of Corrections for aggravated possession of a stolen motor vehicle that was inoperable and left parked on the streets of Chicago. At trial, the vehicle owner's husband testified that defendant operated a towing and repair service and that the husband sold the 14-year-old inoperable vehicle for $40 to one of defendant's employees for scrap.

¶ 2    On this direct appeal, defendant argues: (1) that the trial court erred when it relied on its incorrect recollection of witness testimony and when it excluded certain testimony as inadmissible hearsay; (2) that his trial counsel was ineffective for not attempting to suppress defendant's inculpatory statement made in the presence of a police officer prior to receiving *Miranda* warnings; and (3) that the trial court denied defendant his constitutional right to represent himself at sentencing. In response, the State claims: (1) that defendant failed to preserve these issues, which are forfeited, and failed to show that they rise to the level of plain error; (2) that defendant's trial counsel was not ineffective because his performance was reasonable and defendant has not shown that he suffered prejudice; and (3) that the trial court properly revoked defendant's right to proceed *pro se* when he engaged in obstructionist conduct prior to sentencing. For the following reasons, we reverse and remand.

¶ 3                          BACKGROUND

¶ 4    At trial, the State's evidence established that Sabrina Wright owned an Oldsmobile Cutlass, which was parked on the street in front of her house on 103rd Place in Chicago. The vehicle had been parked there for several weeks and was inoperable. On November 20, 2006, Wright observed that the vehicle was missing and called the police. Shortly thereafter, police

officer DeYoung[1] of the South Holland police department observed an Oldsmobile Cutlass commit a traffic violation on 162nd Street in South Holland and attempted to stop the vehicle, which eluded him. The vehicle crossed over into oncoming traffic and collided with a pickup truck. DeYoung arrived at the crash scene and observed defendant exit the passenger side of the vehicle and fall down as he attempted to flee.

¶ 5        After the State rested, the defense called two witnesses: Wright's husband, Ronald Abrams; and defendant's employee, Everett Myrick. Both witnesses testified that, a few days before, Myrick had paid Abrams $40 to $50 in cash to purchase the vehicle for scrap. After the junk sale, Myrick later returned with defendant and they towed the vehicle to an automobile mechanic, who repaired the vehicle. After closing arguments, the trial court found defendant guilty and sentenced him to 19 years in the Illinois Department of Corrections.

¶ 6                                            I. Motion to Suppress

¶ 7        During a pretrial proceeding, defendant attempted to file several *pro se* motions, but the trial court advised that he must file motions through his counsel. The assistant public defender then reviewed defendant's motions and advised the trial court that she would not adopt several of defendant's motions; however, she would proceed on his motion to suppress an inculpatory statement. Defendant later hired a private attorney, Anderson J. Ward, and neither the assistant public defender nor Ward presented the claims in defendant's *pro se* motion to suppress.

¶ 8                                            II. Trial

¶ 9        Defendant requested a bench trial, which began on July 28, 2009. At trial, the State presented three witnesses: Sabrina Wright, the owner of the vehicle; Kevin Mulhall, who was injured in the automobile collision with defendant; and Detective DeYoung, the arresting officer. The defense called two witnesses: Wright's husband, Ronald Abrams; and Everett Myrick, who worked for defendant's towing company and who claimed he purchased the vehicle from Abrams for defendant.

¶ 10                                          A. Sabrina Wright's Testimony

¶ 11       Sabrina Wright testified that, in October 2004, she purchased a green 1993 Oldsmobile Cutlass, which she registered in her name, and that she was the only person on the vehicle's title. On November 19, 2006, the vehicle was in disrepair and had not been running for several weeks; however, there was no physical damage to the vehicle. When asked specifically if there was any damage to the steering column when she owned it, Wright stated: "When I bought it from the lady, it was problems with it. So but as far as it seemed to be okay for me to ride in." Wright observed the vehicle parked in front of her house on 103rd Place on the evening of November 19, 2006. As she left to take a bus to work the next

---

[1]The record does not disclose Officer DeYoung's first name.

morning at 7:30 a.m., she observed the vehicle missing. Soon afterward, she called the Chicago police department and provided a description of the vehicle and its license plate number. Some time after the police recovered the vehicle, Wright observed that it was "trashed" and "tore up." She testified that she did not know defendant and that she never gave him, or anyone else, permission to operate the vehicle on November 20, 2006, and that she never gave anyone permission to sell the vehicle on her behalf.

¶ 12 On cross-examination, Wright admitted that she did not observe the vehicle being stolen and that she later learned that the vehicle had been sold. The State then objected to the question and answer on hearsay grounds, and the trial court sustained the objection. Specifically, she was asked and answered as follows:

"WARD: And, in fact, without commenting or saying anything about what people may have said to you, you came to learn later that the vehicle had actually been sold?

WRIGHT: Yes."

The trial court's ruling is at issue on this appeal.

¶ 13        B. Kevin Mulhall's Testimony

¶ 14 Kevin Mulhall testified that, on the morning of November 20, 2006, he was driving in South Holland, Illinois, with a friend in his friend's Dodge Ram truck. As he was driving south on State Street, he came to a stop at the intersection at 168th Street. He then pulled into the intersection to make a left-hand turn and collided with a green or blue Oldsmobile Cutlass that was traveling west in the eastbound lane of traffic. Upon impact, the driver-side door to the truck collapsed and Mulhall's head struck the driver-side window. After the collision, he observed a police vehicle arrive at the intersection and a black male who attempted to exit the wrecked Cutlass but fell down in the street. The police officer then approached the Cutlass with a drawn gun, and Mulhall ducked in his seat. He next observed a fire fighter approach the truck and ask if he was okay. Mulhall did not witness the suspect's arrest and was not asked to identify defendant in court.

¶ 15       C. Detective DeYoung's Testimony

¶ 16 Detective DeYoung testified that he is a police detective for the South Holland police department. At 8:15 a.m. on November 20, 2006, he was monitoring the traffic on 162nd Street while parked in the NB Financial Bank's parking lot in a marked police vehicle in full uniform. While there, he observed a vehicle "violate the median" by driving down the center median lane instead of waiting for backed-up traffic to move. DeYoung then drove out of the parking lot and followed the vehicle as it turned onto South Park Avenue. The vehicle turned west onto 168th Street, and DeYoung activated his emergency lights and siren to pull the vehicle over, but the driver sped up. DeYoung accelerated to 48 miles per hour, which was more than twice the posted speed limit of 20 miles per hour, but he still could not catch up to the vehicle. The vehicle did not slow down or stop as it approached the stop sign at the four-way intersection at State Street. The vehicle drove around a semi-tractor trailer truck that was stopped at the intersection and crossed into the wrong lane of traffic. It then collided

with a Dodge Ram truck that was making a left-hand turn. DeYoung was two or three blocks behind the vehicle when he observed the collision. As he arrived at the intersection, the driver of the vehicle, who DeYoung identified in court as defendant, exited through the passenger side of the vehicle and attempted to flee, but he fell in the street. Defendant was yelling in pain due to his injuries. DeYoung approached defendant with his gun drawn and placed him in custody. DeYoung then asked defendant why he was fleeing and whether he was fleeing because the vehicle was stolen, and defendant answered yes.

¶ 17    DeYoung testified that the vehicle was an Oldsmobile Cutlass, and that the lock on the driver-side door was punched out and the steering column was peeled. At 8:17 a.m., he contacted "E-Com," which ran the vehicle's identification number, and learned that the Cutlass had been reported stolen. He did not take photographs of the peeled steering column, and he did not indicate in his police report or in an Illinois Department of Transportation report that the steering column was peeled or that the lock on the driver-side door was punched out.

¶ 18    DeYoung testified that a dashboard camera in his police vehicle recorded the pursuit. The State recorded the videotape onto a DVD and included it in People's Exhibit No. 2. The DVD was played for the court, without audio,[2] and a copy of the DVD was provided to the appellate court.[3] The video shows that DeYoung activated his sirens and attempted to stop an Oldsmobile Cutlass, but the vehicle evaded him at a high rate of speed before colliding with a Dodge Ram truck. Seconds after the collision, defendant fell to the ground next to the passenger-side door, and DeYoung approached him with his gun drawn. Later on, DeYoung entered the vehicle from the passenger-side door and inspected the area around the vehicle's steering wheel. However, the video does not reveal what DeYoung observed.

¶ 19    After DeYoung's testimony, the trial court admitted the recording from DeYoung's dashboard camera and the certified vehicle information for the 1993 Oldsmobile Cutlass into evidence without objection. However, the certified vehicle information does not appear in the appellate record.

¶ 20    The State then rested, and the trial court denied defendant's motion for a directed finding.

¶ 21                          D. Ronald Abrams' Testimony

¶ 22    The defense then called two witnesses. The first defense witness, Ronald Abrams, testified that he is married to Sabrina Wright, and that they both owned a blue[4] 1992[5] Cutlass

---

[2]The video was later played with audio in the defense's case.

[3]The State made a motion to supplement the record, which we granted.

[4]Wright had testified that she was never really sure what the color of the vehicle was, but that she thought it was green. Mulhall had testified that it was green or blue.

[5]The vehicle information admitted into evidence and Wright's testimony both indicate that the vehicle's manufacture year was 1993. However, Abrams testified that it was a 1992 model.

Sierra. In 2000,[6] Abrams purchased the vehicle from a neighbor as a gift for his wife. The vehicle's title and registration were in Wright's name, and she kept possession of the keys. In November 2006, the vehicle had not been running for a month or two, and it had a couple of flat tires and was "kind of beat up." The steering column was not peeled, but there was some front-end damage, though Abrams was not sure if this was from the collision on November 20, or from a different accident prior to that day. Abrams had received a notice from the city of Chicago that the vehicle would be cited if it was not moved.

¶ 23    Abrams testified that he sold the vehicle for $40 to Joe, a man that Abrams had known for several years. Although Abrams did not provide Joe's last name, he testified that Joe lives in the neighborhood and drives a tow truck that says "Joe's Towing" on the side.[7] Abrams did not observe Joe in the courtroom and he testified that Joe was not defendant, whom he had met earlier in a lawyer's office. The vehicle was parked in front of Abrams' home during the morning of the sale, but was moved afterwards. The transaction was a handshake deal and did not include a bill of sale, nor did Abrams or his wife transfer or sign over the title to Joe. Abrams told "quite a few people" that he sold the vehicle, but he did not tell his wife. When his wife told him that the vehicle was gone, he did not tell her that he sold it, nor did he tell her when she called the police to report it missing. When the police called his house and told him that the vehicle had been stolen, he did not tell them that he had sold it. Abrams could not recall the exact date that he sold the vehicle, but he knew that the sale occurred a few days before the police called his home. Abrams did not remove the vehicle's license plates before it was taken away.

¶ 24    On cross-examination, Abrams testified that he had been convicted of several crimes in the past, including retail theft.


¶ 25                E. Everett Myrick's Testimony

¶ 26    The second defense witness, Everett Myrick, testified that he had once operated a towing business, which he named "Joe's Towing" because people had a hard time remembering the name Everett and instead called him Joe. By November 20, 2006, Myrick worked for "Miller's Towing," a towing and scrapping company owned by defendant. Myrick towed vehicles for defendant and acted as a middleman in deals with people who wanted to sell their old vehicles. Myrick received a commission each time he brought defendant a customer or a vehicle. Myrick has known Abrams for over 20 years and calls him by the nickname "Ponytail."

¶ 27    Myrick testified that, in November 2006, he observed an Oldsmobile parked in front of Abrams' home that had not been moved for several weeks. Myrick met with Abrams, who

---

[6]Although Abrams testified that he had purchased the vehicle in 2000, Wright had testified that she had purchased the vehicle in 2004.

[7]Everett Myrick, defendant's second witness, would testify next that he was "Joe."

then agreed to sell him the vehicle for $50[8] in cash. Myrick purchased the vehicle as a third party for defendant, and he did not provide Abrams with a bill of sale. Myrick did not receive the title or keys to the vehicle because Abrams told him that he had misplaced them. Myrick returned later with defendant and used defendant's tow truck to tow the vehicle to an automobile mechanic on 99th Street in Chicago. The steering column was not peeled when he towed the vehicle. Defendant paid for the repairs. The vehicle remained in the mechanic's shop for three days after it was towed. Myrick did not inform the police of the sale after he learned defendant had been arrested for stealing the vehicle.

¶ 28    After Myrick's testimony, the defense replayed the videotape from DeYoung's police vehicle, this time with audio. The copy of the video provided in the appellate record contains audio; however, the sound frequently mutes and some of the dialogue is indecipherable. Despite the poor clarity, DeYoung can be heard asking defendant, who was lying on the ground and in the process of being handcuffed, "What did you do? What are you running for?" There is no audible response except for defendant yelling in pain about a broken leg. At no point during the video is defendant heard receiving his *Miranda* warnings from DeYoung or any other officer.

¶ 29    Defendant exercised his constitutional right not to testify, and rested. During closing arguments, the defense argued that the State failed to prove that the vehicle was stolen and that the evidence showed that defendant purchased the vehicle from Abrams. Additionally, the defense argued DeYoung's testimony concerning the peeled steering column was impeached by the fact that he did not mention it in either report he filed regarding the incident. The defense further argued that the video recorded by DeYoung's dashboard camera did not support his testimony because defendant could be heard yelling in pain from his injuries, but the video did not show that defendant admitted to stealing the vehicle.

¶ 30    In its closing, the State claimed that it had proved defendant guilty beyond a reasonable doubt and that Abrams and Myrick lied about the vehicle sale because they were friends with defendant.[9] Also, the State argued, incorrectly, that Wright testified that she observed that the steering column had been damaged after the police recovered the vehicle, which indicated that the vehicle was stolen and not sold.

¶ 31    Following closing arguments, the trial court found that DeYoung's testimony concerning the steering column was corroborated by Wright because she "did, in fact, indicate[ ] that the steering column was peeled." As noted, the trial court was incorrect in recalling Wright's testimony because she never testified the steering column was peeled. Wright's testimony was the only evidence that the trial court specified when it resolved credibility determinations in favor of the State. The trial court then found defendant guilty of aggravated possession of a stolen motor vehicle.

¶ 32    Even though the defense did not object at trial to the prosecutor's characterization of

_____

[8]Abrams had testified that he sold the vehicle for $40.

[9]There was no testimony that they were friends with defendant, but counsel did not object to this argument and it is not a ground that defendant argues in this appeal.

Wright's testimony during the State's closing, defendant claims on appeal that the trial court's reliance on the prosecutor's incorrect remark was plain error.

¶ 33　　After hearing factors in aggravation and mitigation, the trial court sentenced defendant to 19 years in the Illinois Department of Corrections, with credit for 1,093 days served prior to sentencing. Defendant filed a motion to reconsider the sentence, which was denied. Defendant now appeals.

¶ 34　　　　　　　　　　　　　　　　ANALYSIS

¶ 35　　On appeal, defendant claims: (1) that the trial court committed plain error when it relied on an incorrect recollection of Wright's testimony and when it excluded a portion of Wright's testimony as inadmissible hearsay; (2) that his trial counsel was ineffective for failing to move to suppress defendant's inculpatory statement made in the presence of Officer DeYoung without receiving *Miranda* warnings; and (3) that the trial court denied defendant his constitutional right to represent himself at sentencing. In response, the State claims: (1) that defendant did not preserve these issues and that they do not rise to the level of plain error; (2) that defendant's trial counsel was not ineffective because his performance was reasonable and defendant has not shown that he suffered prejudice; and (3) that the trial court properly revoked defendant's right to proceed *pro se* when he engaged in obstructionist conduct prior to sentencing.

¶ 36　　　　　　　　　　　　　　I. Plain Error Review

¶ 37　　Defendant's first claim is that the trial court committed plain error when it relied on an incorrect recollection of Wright's testimony and when it excluded a portion of Wright's testimony as inadmissible hearsay.

¶ 38　　The State argues that defendant has forfeited the errors related to Wright's testimony by failing to object to them at trial. Defendant acknowledges that he did not object to these two errors at trial but argues they may still be reviewed under the plain error doctrine. Ill. S. Ct. R. 615(a).

¶ 39　　To preserve an alleged error for review, a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The challenge is considered waived on appeal if a defendant fails to satisfy either prong of this test. *Enoch*, 122 Ill. 2d at 186. "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In a plain error analysis, "it is the defendant who bears the burden of persuasion." *People v. Woods*, 214 Ill. 2d 455, 471 (2005). However, in order to find plain error, we must first find that the trial court committed some error. *Piatkowski*, 225 Ill. 2d at 565 ("the first step is to determine whether error occurred").

¶ 40 We will first consider whether defendant's claims constitute errors, and then we will determine whether the cumulative effect of these errors rises to the level of plain error. *People v. Cox*, 377 Ill. App. 3d 690, 704-05 (2007) (a reviewing court should consider the errors' cumulative effect).

¶ 41                                    A. Incorrect Recollection of Evidence

¶ 42 Defendant claims that the trial court erred when it relied on a mischaracterization of Wright's testimony, and the State concedes that the trial court misspoke when it stated that Wright testified that the steering column was peeled. Whether Wright testified that the steering column is peeled is a purely factual determination, and we review the trial court's statement for clear error. *Piatkowski*, 225 Ill. 2d at 565.

¶ 43 During closing arguments, the State argued that Wright observed that the vehicle's steering column had been peeled, which indicated that the vehicle had been stolen. The trial court relied on this statement when it found defendant guilty of possession of a stolen motor vehicle:

"Defense makes note that the steering column to the car was not peeled, which is a characteristic of a stolen motor vehicle. Hence, the officer, although he testified to it, did not put it in his police report. However, Ms. Wright did, in fact, indicate that the steering column was peeled."

¶ 44 A careful review of the appellate record reveals that Wright did not testify that the vehicle's steering column was damaged. On direct examination, the State asked her if there were any damage to the steering column prior to November 20, 2006, and she answered: "When I bought it from the lady, it was problems with it. So but as far as it seemed to be okay for me to ride in." When asked about the condition of the vehicle after defendant's collision with Mulhall, Wright testified only that it was "tore up" and "trashed," but made no reference to the steering column. Based on this testimony, we find that the trial court erred when it stated that Wright testified that the steering column was peeled.

¶ 45                                    B. Exclusion of Wright's Testimony

¶ 46 Defendant next claims that the trial court incorrectly sustained the State's objection to the defense's question concerning whether Wright later learned that the vehicle had been sold. Defendant argues that this line of questioning was not hearsay because it was not offered as proof that Abrams sold the vehicle but, rather, to show Wright's state of mind. In the alternative, defendant claims that, even if the statement was hearsay, it was still admissible to rehabilitate Abrams' credibility. The State responds: (1) that the defense's question called for inadmissible hearsay because it sought to prove that the vehicle was actually sold, and (2) that, since Abrams had not yet testified, the statement was inadmissible because it was not intended to corroborate his testimony. We find that the trial court erred when, on hearsay grounds, it sustained an objection to whether Wright believed her vehicle had been sold because the question did not call for hearsay, only for Wright's state of mind.

¶ 47 The rule against hearsay generally prevents the introduction at trial of out-of-court

statements offered to prove the truth of the matter asserted. *People v. Evans*, 373 Ill. App. 3d 948, 964 (2007). Unless the statement " 'falls within an exception to the hearsay rule,' " this type of evidence " 'is generally inadmissible due to its lack of reliability' " and the inability of the opposing party to confront the declarant. *People v. Caffey*, 205 Ill. 2d 52, 88 (2001) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357 (1997)).

¶ 48    In the instant case, the trial court disallowed Wright's response to the following question:

"WARD: And, in fact, without commenting or saying anything about what people may have said to you, you came to learn later that the vehicle had actually been sold?

WRIGHT: Yes."

However, this question did not call for a response where the basis of Wright's knowledge must have originated from an out-of-court statement. The trial record does not indicate how Wright came to know that the vehicle was sold.

¶ 49    Also, even if Wright had learned of the sale through an out-of-court statement, the line of questioning was still proper because it intended to show Wright's state of mind, and not to prove the truth of the matter asserted. A statement offered for some reason other than "the truth of the matter asserted" does not violate the rule against hearsay. *Evans*, 373 Ill. App. 3d at 964. For example, "[a] statement that is offered to prove that a listener had notice of the information contained therein, rather than to prove the truth of the matter asserted, is not hearsay." *People v. Shoultz*, 289 Ill. App. 3d 392, 395-96 (1997). Here, Wright's state of mind or knowledge that the vehicle had actually been sold is central to the crime for which defendant was charged. In order for defendant to be found guilty of possession of a stolen motor vehicle, the State must prove: (1) that defendant was the driver or operator of a vehicle, (2) that he was not entitled to possession of that vehicle, and (3) that he knew the vehicle was stolen or converted. 625 ILCS 5/4-103.2(a)(7)(A) (West 2006). Wright's belief that her vehicle was sold rebuts the inference that the car was stolen or that defendant had knowledge of the theft.

¶ 50    On direct examination, the State elicited testimony from Wright to show that the vehicle was stolen. Wright testified that she owned the vehicle, that only her name was on the title, that only she had keys, that she did not give anyone permission to sell the vehicle, and that she had not given anyone permission to operate the vehicle on the day she observed it was missing. The State relied on these inferences to prove that the vehicle was actually stolen. However, Wright's testimony did not provide direct evidence that either she or defendant knew that the vehicle was stolen, and the State's case relied on an inference from Wright's testimony to prove this fact. On cross-examination, the defense attempted to rebut this inference that the vehicle was stolen, and Wright testified that she had not actually observed someone steal the vehicle. The defense then attempted to show that, not only did Wright not observe a theft, but also she learned that the vehicle had actually been sold. Thus, the trial court should have permitted the defense to rebut that inference by showing that Wright had knowledge that the vehicle was not actually stolen because that was the key element at issue in defendant's prosecution.

¶ 51    We find that the trial court committed clear error when it excluded Wright's testimony on hearsay grounds because the line of questioning did not call for a hearsay answer.

-10-

¶ 52                                 C. Errors' Cumulative Effect

¶ 53        Defendant claims that the trial court committed plain error and that his conviction should
be reversed and remanded for a new trial. Defendant argues the evidence in this case is close
and that the two errors taken together tipped the scales of justice against him. The State
claims that the trial court did not commit plain error because the evidence against defendant
was so overwhelming that he would have been convicted notwithstanding. For the foregoing
reasons, we find that defendant's conviction must be reversed.

¶ 54        A trial court's clear or obvious error rises to the level of plain error when "the evidence
is so closely balanced that the error alone threatened to tip the scales of justice against the
defendant, regardless of the seriousness of the error." *Piatkowski*, 225 Ill. 2d at 565. When
the trial court has erred in multiple instances, a reviewing court should consider the errors'
cumulative effect on whether the errors denied defendant a fair trial. *People v. Sullivan*, 48
Ill. App. 3d 787, 793-94 (1977); *Cox*, 377 Ill. App. 3d at 704-05.

¶ 55        Taken together, the effect of the trial court's errors prejudiced defendant because the
evidence at trial was closely balanced. The central issue in this case was whether the vehicle
was stolen or whether defendant was a *bona fide* purchaser. As stated, for defendant to be
convicted of possession of a stolen motor vehicle, the State must prove that the vehicle was
stolen and that defendant knew that the vehicle was stolen. 625 ILCS 5/4-103.2(a)(7) (West
2006). Whether defendant had knowledge "may be established by proof of circumstances that
would cause a reasonable man to believe that the property [was] stolen." *People v. Kaye*, 264
Ill. App. 3d 369, 383 (1994). However, an inference of guilt arising from stolen property may
be rebutted by defendant's reasonable explanation. *People v. Mijoskov*, 140 Ill. App. 3d 473,
488 (1986).

¶ 56        In the case at bar, defendant rebutted the State's inference that he knew that the vehicle
was stolen by calling witnesses who testified that an employee of defendant had actually
purchased the vehicle a few days before Wright observed that it was missing. Myrick
testified that he worked for defendant's towing company and that he acted as a "middle man"
on behalf of defendant when he purchased the vehicle from the owner's husband, who lived
in the same house in front of which the vehicle was parked. Defendant's version of events
is bolstered by the fact that Wright testified that the vehicle was in disrepair. Under the
State's theory, defendant stole the disabled vehicle off the street and was observed driving
it just hours later at speeds in excess of 70 miles per hour. It is reasonable to believe that
defendant first towed the vehicle and took it to an automobile mechanic, where it was
repaired over the course of a few days before defendant drove the vehicle. Defendant's
explanation is a reasonable one, and a person in his position would not have believed that the
vehicle was stolen. *Mijoskov*, 140 Ill. App. 3d at 488.

¶ 57        In response, the State cites our court's holding in *People v. Abdullah*, 220 Ill. App. 3d
687, 690 (1991), which stated that it may be inferred that a person exercising exclusive
unexplained possession over a stolen or converted vehicle has knowledge that such vehicle
is stolen or converted, regardless of whether the date on which such vehicle was stolen is
recent or remote. However, the key phrase here is that the exclusive possession must be

-11-

unexplained. Here, defendant provided a reasonable explanation for how he came into possession of the vehicle, so the mere fact that he was driving the vehicle cannot be taken as an inference that he knew that the vehicle was stolen. *Mijoskov*, 140 Ill. App. 3d at 488.

¶ 58    The State claims that the evidence in this case boiled down to a determination of credibility and that the trial court determined credibility in the State's favor. Our supreme court has held that the evidence at trial is closely balanced when the key issue involves "a contest of credibility" between witnesses with no extrinsic evidence presented to corroborate or contradict either version of events. *People v. Naylor*, 229 Ill. 2d 584, 606-07 (2008). Here, the trial court's determination of guilt was dependent on which witnesses were most credible, because the trial court excluded certain extrinsic evidence used to corroborate the key facts of the case. Since the competing issues of credibility were close, defendant was prejudiced when the trial court made an error of fact in its credibility determination.

¶ 59    In arguing that the evidence is not close, the State points to Wright's testimony that she owned the vehicle, that the vehicle was registered in her name only, that only she had the keys, and that she never gave anyone permission to operate or sell the vehicle. However, these facts are not inconsistent with defendant's explanation that he purchased the vehicle from Wright's husband. For the defendant to be found guilty, the State must prove that the vehicle was actually stolen and that defendant knew it to be stolen. 625 ILCS 5/4-103.2(a)(7) (West 2006). Wright may have learned at some point that her husband sold the vehicle, and it would be reasonable for a buyer in defendant's position to believe that Wright's husband had the authority to sell it.

¶ 60    The State also points to the fact that Myrick did not receive the title or keys to the vehicle, that the locks were punched out, and that defendant attempted to elude the police. These facts are also not inconsistent with the defense's version of the events. For one, the fact that Myrick did not receive the title or keys to the vehicle is not inconsistent with the defense's statement of the facts. Defendant purchased the vehicle as junk, which does not carry the same requirements for transfer of title and keys as is required for the sale of a functioning automobile. 625 ILCS 5/3-117.1 (West 2006). Thus, it was not unusual that the title was not delivered at the time of the transaction, and a buyer in defendant's position would be under the impression that he legally purchased the vehicle from someone who had authority to sell it. Furthermore, Myrick's testimony that he did not receive the keys at the time of the sale is not incredible because he purchased the vehicle for scrap, and Abrams knew that Myrick drove a tow truck and would be able to tow the vehicle off the street since it was inoperable.

¶ 61    Secondly, the fact that the locks were tampered with is not inconsistent with defendant's claim that he was a *bona fide* purchaser. Since Myrick testified that he did not receive the keys at the time of the transaction, it follows that defendant needed to punch out the locks to enter the vehicle when he decided to tow it away.

¶ 62    Third, the State argues that defendant's flight is evidence of his consciousness of guilt. *People v. Lewis*, 165 Ill. 2d 305, 349 (1995). However, Officer DeYoung initially pursued defendant because of a traffic violation. While it was improper for defendant to flee, we cannot presume that defendant attempted to elude the police because his vehicle was stolen,

rather than because he had committed a serious moving violation. Further, we cannot consider Officer DeYoung's testimony that defendant admitted that he fled because the vehicle was stolen. DeYoung elicited the statement when he interrogated defendant in custody without reciting *Miranda* warnings, and, for reasons which we will discuss later, we find that counsel was ineffective for failing to present defendant's *pro se* motion to suppress that statement.

¶ 63    Finally, the State claims that the defense's witnesses were incredible because of various weaknesses in their testimony, such as a discrepancy in the sale price, the vehicle's model year, and when the vehicle was purchased; that Abrams initially did not tell his wife that he had sold the vehicle; and that Myrick and Abrams had known each other for over 20 years. However, all of these inconsistencies are collateral factors not dispositive of defendant's version of the events. The fact that Abrams did not initially tell his wife of the sale is troublesome, and Myrick and Abrams' relationship gives some credence to the State's position that the story of a sale was created as a defense after defendant was charged.

¶ 64    Because the evidence in this case was close, the trial court's incorrect recollection of Wright's testimony and its exclusion of a portion of Wright's testimony on hearsay grounds prejudiced its determination of credibility. At trial, the defense impeached DeYoung's credibility when it elicited testimony that he did not take any photographs of the steering column and that he did not mention this fact in the reports he prepared concerning the incident. The trial court's statements show that it rejected this attack on DeYoung's credibility because it believed that Wright corroborated his testimony regarding the steering column. In fact, Wright's testimony was the only evidence that the trial court pointed out when it made a determination of credibility. The trial court's statements show that this error could have reasonably played an inappropriate role in the trial court's decision on credibility.

¶ 65    Furthermore, the trial court erred when it sustained an objection to the defense's question to Wright concerning her knowledge of the vehicle's sale, which went straight to the heart of the issue of whether defendant was a *bona fide* purchaser of the vehicle. Had Wright's testimony that she learned that the vehicle had actually been sold been considered, the defense's statement of the facts becomes more persuasive because a State witness would then have corroborated the defense's version of the events. Since the evidence in this case was close, the trial court's exclusion of Wright's testimony alone was enough to tip the scales of justice against defendant. *Piatkowski*, 225 Ill. 2d at 565. Taken together, all of these factors had the combined effect of denying defendant a fair trial. *Sullivan*, 48 Ill. App. 3d at 793-94.

¶ 66    The trial court's combined errors rose to the level of plain error, and defendant's conviction is reversed and the cause is remanded for a new trial.


¶ 67                    II. Ineffective Assistance of Counsel Claim

¶ 68    Defendant next claims that his trial counsel was ineffective for failing to move to suppress defendant's inculpatory statement made in the presence of a police officer without receiving *Miranda* warnings. The State responds that defendant's trial counsel was not ineffective because his performance was reasonable and that defendant has not shown that he suffered prejudice.

¶ 69    A claim of ineffective assistance of counsel is judged according to the two-prong, performance-prejudice test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526 (1984); *People v. Boyd*, 363 Ill. App. 3d 1027, 1034 (2006). "To obtain relief under *Strickland*, a defendant must prove [(1)] that defense counsel's performance fell below an objective standard of reasonableness and [(2)] that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different." *Boyd*, 363 Ill. App. 3d at 1034 (citing *Strickland*, 466 U.S. at 687-88). A defendant must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel. *People v. Flores*, 153 Ill. 2d 264, 283 (1992).

¶ 70                          A. Failure to Suppress

¶ 71    Defendant claims that his trial counsel's performance fell below an objective standard of reasonableness when he failed to follow through on defendant's *pro se* motion to suppress, which defendant's prior counsel had reviewed and found had merit. In response, the State argues that trial counsel's decision not to proceed on the motion was proper because it constituted trial strategy.

¶ 72    To be reasonably effective, criminal defense attorneys must raise constitutional violations when constitutional rights have been violated and move to suppress damning evidence produced in violation of constitutional guarantees. *People v. Brown*, 358 Ill. App. 3d 580, 593-94 (2005). Trial counsel enjoys the strong presumption that his decision whether to bring a motion to suppress evidence is trial strategy and that his failure to move to exclude evidence was proper. *People v. Spann*, 332 Ill. App. 3d 425, 432 (2002). "To overcome that presumption, the defendant must demonstrate [(1)] a reasonable probability that the motion would have been granted and [(2)] that the outcome of the trial would have been different." *Spann*, 332 Ill. App. 3d at 432-33 (citing *People v. Rodriguez*, 312 Ill. App. 3d 920, 925 (2000)). "Reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

¶ 73            1. Reasonable Probability That Motion Would Be Granted

¶ 74    Defendant has rebutted the presumption that counsel's decision not to file a motion to suppress was proper. First, there is a more than reasonable probability that defendant's motion would have been granted because defendant's admission was the product of a custodial interrogation in the absence of receiving *Miranda* warnings. "Custodial interrogation occurs when questioning is initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of freedom of action in a significant way." *People v. Briseno*, 343 Ill. App. 3d 953, 957 (2003) (citing *Berkemer v. McCarty*, 468 U.S. 420, 423 (1984)). In *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), the United States Supreme Court found that an individual's privilege against self-incrimination is jeopardized when he is taken into custody or otherwise deprived of his freedom and is subjected to questioning. To protect the suspect's privileges, he must be warned prior to any questioning that "he has the right to remain silent, that anything he says can be used against him in a

court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 478-79. "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *People v. Calderon*, 101 Ill. App. 3d 469, 477 (1981).

¶ 75    In the instant case, DeYoung testified that when he attempted to stop defendant for a moving violation, defendant sped up to a high rate of speed and eventually collided with another motor vehicle. After the crash, defendant exited his vehicle and attempted to flee, but fell to the ground as DeYoung approached him with his gun drawn. DeYoung testified that, at that point, he "placed [defendant] into custody" and he "asked [defendant] why he was fleeing and *** if the car was stolen due to the fact that he was fleeing and [defendant] said yes." Defendant's statement was not spontaneous and was instead the product of an interrogation while he was in the officer's custody. Further, DeYoung did not testify that he gave defendant *Miranda* warnings prior to questioning him or at any time.

¶ 76    Since there is no evidence that defendant received *Miranda* warnings, and the statement was made as a result of a custodial interrogation, there was a reasonable probability that the trial court would have granted defendant's motion to suppress.

¶ 77            2. Reasonable Probability of a Different Outcome at Trial

¶ 78    Furthermore, there was a reasonable probability that the outcome at trial would have been different. As stated, the evidence in this case was close, and the trial court's finding of guilt came down to a credibility determination concerning whether defendant actually knew that the vehicle was stolen. Although Wright testified that she did not give anyone permission to drive the vehicle, her husband testified that he sold it for scrap to defendant's employee. Without defendant's statement, the evidence at trial merely shows that Wright did not give anyone permission to drive her vehicle and that defendant was driving it, which are facts that are not inconsistent with defendant's explanation that defendant's employee purchased the vehicle for defendant from Wright's husband. In fact, defendant's statement was the only direct evidence that he knew that the vehicle was stolen, and its inclusion at trial was vital to proving a key element of the crime with which defendant was charged.

¶ 79    Also, suppressing the statement would have called much of DeYoung's testimony into question. "A true understanding of the tainted evidence's value, and why it might well have had a profound effect on the outcome of this case, requires a look at how [the witness's] testimony was vulnerable to attack, absent the illegally obtained corroboration." *People v. Brown*, 358 Ill. App. 3d 580, 599 (2005). Here, DeYoung's testimony would have been more vulnerable to impeachment–namely, his testimony that the steering column was peeled, which was not corroborated by any evidence at trial other than defendant's admission that the vehicle was stolen. Thus, there was a reasonable probability that the outcome at trial would have been different if the statement was quashed and the credibility determinations were made based on the trial court's proper recollection of the evidence and the inclusion of Wright's testimony concerning when she found out the vehicle was sold.

¶ 80    In sum, defendant has overcome the presumption that his failure to move to suppress was trial strategy by showing a reasonable probability both that the motion would have been granted and the outcome of the trial would have been different. *Spann*, 332 Ill. App. 3d at 432-33. Thus, counsel's failure to proceed with defendant's *pro se* motion fell below an objective standard of reasonableness and prejudiced defendant, denying him a fair trial as we will now explain.

¶ 81                              B. Prejudice to Defendant

¶ 82    With regard to the second prong, defendant claims that he suffered prejudice when his trial counsel failed to suppress the inculpatory statement. As discussed above, the evidence in this case was closely balanced, and defendant's statement that he stole the vehicle was a key piece of the State's proof that he knew that he was in possession of a stolen motor vehicle. "A confession is the most powerful piece of evidence the State can offer, and its effect *** is incalculable." *People v. Fillyaw*, 409 Ill. App. 3d 302, 316 (2011) (finding that the improper admission of defendant's confession satisfied the prejudice prong of the *Strickland* test). Given the weight that defendant's statement carried, defendant was prejudiced by its admission at trial.

¶ 83    The State claims that trial counsel's decision not to present defendant's motion to suppress was proper and that the totality of counsel's performance was competent, though not perfect. In support, the State cites our holding in *People v. Diaz*, 377 Ill. App. 3d 339, 347-48 (2007), in which we found that the defendant's counsel in a driving while under the influence of liquor case was not ineffective for failing to present a motion to suppress the defendant's statement that he had consumed two beers prior to driving his vehicle. In *Diaz*, we found that counsel's decision to allow the statement constituted legitimate trial strategy because he argued that consuming only two beers was insufficient to impair the defendant's ability to drive. *Diaz*, 377 Ill. App. 3d at 348. Further, we found that, even if the defendant's statement was suppressed, there was other substantial evidence to convict him, including his refusal to take a Breathalyzer test and the officer's testimony that the defendant's behavior indicated that he was driving under the influence. *Diaz*, 377 Ill. App. 3d at 348.

¶ 84    However, *Diaz* is distinguishable from the case at bar because, here, defendant rebutted the presumption that his counsel's decision not to attempt to suppress the statement constituted trial strategy, and the evidence was not so overwhelming that defendant would have been found guilty had his statement been suppressed. First, counsel's performance here in totality is below the objective standard for criminal defense lawyers because she failed to move to suppress a vital piece of evidence that incriminated defendant that should have been suppressed. A counsel's failure to suppress damning evidence procured in violation of defendant's constitutional guarantees constitutes ineffective assistance of counsel, even if counsel performs competently in other areas. *Brown*, 358 Ill. App. 3d at 593-94. Even if defense counsel vigorously tests the State's evidence at trial, prejudice can be found where a motion to suppress "would have been defense counsel's strongest, and most likely wisest, course of action." *People v. Little*, 322 Ill. App. 3d 607, 613 (2001). Unlike *Diaz*, the State does not offer any explanation for how defendant's statement could have been part of a

legitimate trial strategy. Since that statement was the product of a custodial interrogation without the proper procedural safeguards, counsel's failure to move to suppress the statement was unreasonable and defendant was prejudiced by its admission at trial.

¶ 85    Second, *Diaz* is distinguishable because the evidence in this case is not so overwhelming that defendant would have been found guilty even if his statement had been suppressed. The evidence in the instant case is close, and the trial court determined his guilt based on an assessment of the witnesses' credibility and his admission to the police. The key issue in the case was whether defendant actually knew that the vehicle was stolen, or whether he was a *bona fide* purchaser. Defendant's statement to the police was critical to the trial court's finding of guilt because it was the only direct evidence concerning defendant's knowledge of the vehicle's ownership. "[P]rejudice may be found even when the chance that minimally competent counsel would have won acquittal is significantly less than 50 percent." (Internal quotation marks omitted.) *People v. McCarter*, 385 Ill. App. 3d 919, 935 (2008). Given the significance of defendant's statement to the State's case against defendant, the outcome at trial was prejudiced by the admission of defendant's statement made without *Miranda* warnings at trial.

¶ 86    Since we are reversing defendant's conviction, we need not address defendant's claims concerning sentencing, where he received 19 years for the theft of an inoperable vehicle worth $40.

¶ 87    As a final matter, we note that the evidence at trial was not so lacking that a retrial of defendant would violate his constitutional right against double jeopardy. " 'The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.' " *People v. Taylor*, 76 Ill. 2d 289, 309 (1979) (quoting *Burks v. United States*, 437 U.S. 1, 11 (1978)). The evidence in this case was sufficient to support defendant's conviction; however, in removing the risk of double jeopardy, we have only considered the sufficiency of the evidence at the original trial and make no finding as to defendant's guilt or innocence on retrial. *People v. Shulz*, 154 Ill. App. 3d 358, 374 (1987); *Taylor*, 76 Ill. 2d at 309.

¶ 88                                     CONCLUSION

¶ 89    For the foregoing reasons, we reverse defendant's conviction and remand for a new trial. The trial court committed plain error when it relied on its incorrect recollection of Wright's testimony and when it excluded a portion of her testimony as inadmissible hearsay when it was not. Further, defendant's counsel was ineffective for failing to move to suppress defendant's inculpatory statement, made during the course of a custodial interrogation without receiving *Miranda* warnings. For these reasons, we reverse and remand for a new trial.

¶ 90    Reversed and remanded.

¶ 91    PRESIDING JUSTICE LAMPKIN, dissenting.

¶ 92    I respectfully dissent and would affirm defendant's conviction. I do not agree with the majority's conclusions that the trial court committed plain error concerning Wright's testimony, that the alleged errors played an inappropriate role in the trial court's decision on credibility, that the evidence in this case was close, and that defendant was denied effective assistance of counsel when counsel did not move to suppress defendant's alleged statement to Detective DeYoung. Contrary to the majority's statement in paragraph 86, defendant has not raised a claim concerning sentencing. Rather, defendant argues that he was denied his right to self-representation when the trial court appointed counsel for the sentencing phase of the trial after initially allowing defendant to proceed *pro se*. I conclude that defendant's sixth amendment right to self-representation was not violated.

¶ 93                           I. Plain Error

¶ 94    There was no plain error in either the trial court's comment after closing argument about Wright's testimony concerning the condition of the steering column, or in the trial court's ruling that a portion of her testimony was inadmissible hearsay.

¶ 95              A. The Trial Judge's Characterization of Wright's Testimony

¶ 96    Defendant argues the trial court's incorrect recollection of Wright's testimony regarding the condition of the steering column was critical to its finding of guilt and thus constituted a plain and obvious error. I do not agree.

¶ 97    According to the record, this bench trial commenced on July 28, 2009, and the State presented the testimony of its three witnesses on that date. Wright testified that her car had been parked "right directly in front of [her] house." Although it had not "been running for quite a few weeks," there was no damage to the car. Wright seemed confused when the State asked her if she knew what the steering column of her car looks like. She said that, although there were some problems with the car when she bought it, it seemed to be okay for her to ride in and she used her key in the ignition whenever she started her car. After she reported her car missing to the police, she saw her vehicle again and described it as trashed and torn up. She remarked that a very long time has passed since she last saw the vehicle.

¶ 98    Multiple continuances were granted before the defense completed the presentation of its case. Abrams did not testify until September 1, 2009, and Myrick testified on December 29, 2009. The defense rested on February 11, 2010, and closing argument commenced.

¶ 99    The State argued that it had met its burden to prove that defendant knew the car was stolen because he fled the police after a mere traffic violation, sped recklessly, drove in the lane for oncoming traffic, and stopped only when he collided with another vehicle and could go no further. Furthermore, Detective DeYoung had no reason to lie, whereas Abrams, a convicted felon, and Myrick, a friend of defendant and his parents for many years, were lying to help defendant escape his responsibility. Moreover, Wright testified that she saw her car the night before it was stolen, and defendant was found driving it the next morning without keys and with a peeled steering column. According to the State, Wright said that:

"when she got her car back, it was completely damaged and the steering column was damaged. She told you when she had it, she could always use her keys and never had a problem using her keys to start the vehicle."

The defense made no objection to the State's characterization of Wright's testimony.

¶ 100 During its ruling, the trial court stated that it had reviewed its notes and all the evidence over the course of this drawn-out bench trial. The trial court noted that only Wright held title to the car, which was involved in a police chase and serious accident when defendant was arrested. Although the defense argued that defendant obtained possession of the car after Abrams sold it as junk to Myrick without the title, Wright indicated that she never sold her car. The trial court acknowledged that the defense argued the steering column was not peeled because Detective DeYoung did not write that observation in his police report. Then the trial court stated:

"However, Ms. Wright did, in fact indicate that the steering column was peeled. It is contradicted by the defense side as to her testimony as well.

I have reviewed all of the evidence on each side and weighed them in this case. The Court does resolve the credibility aspects in favor of the prosecution. And as a result, there is a finding of guilty of the charge."

¶ 101 Contrary to defendant's argument on appeal, the trial court did not state that Wright testified that the steering column was peeled. Rather, the trial court stated that her testimony "indicate[d] that the steering column was peeled." I do not find this characterization of Wright's testimony to be inaccurate. Moreover, it was reasonable to infer that Wright's description of her car as torn up included the condition of her steering column because the evidence established that defendant had been driving the car without any keys. Furthermore, the trial court was well aware that the defense disputed the fact that the steering column was peeled where the defense argued that no such detail appeared in the police report or was photographed.

¶ 102 Finally, Wright's testimony about the condition of her car after the incident was not, contrary to defendant's assertion on appeal, "critical" to the trial court's finding of guilt. The trial court considered all the evidence, which established that Wright never gave anyone permission to sell or take her vehicle; she was the registered owner of the car; the car was not junk even though it was not running; defendant was driving the vehicle without any keys or title and the driver's door lock was punched out; defendant sped away from Detective DeYoung and drove into the lane for oncoming traffic in an attempt to elude him when Detective DeYoung tried to pull defendant over for a mere traffic violation; defendant attempted to flee from the vehicle after the collision but was stopped by his injury; and Myrick, who purported to work with defendant by buying and disposing of old cars, conceded that he never obtained any title, keys, or receipt from Abrams for the purported sale of Wright's car.

¶ 103 Contrary to defendant's argument on appeal, the evidence here was not closely balanced and the testimony of Abrams and Myrick was not credible. For example, Abrams, a convicted felon, acknowledged that he knew his wife had reported the car as stolen to the police and the police had called their house and informed them that the stolen car had been

in an accident. Nevertheless, Abrams did not tell his wife or the police that he had sold the car. Although Abrams claimed that he sold Wright's car because it was a piece of junk and had been damaged in an accident, the videotape showed that the car was not a piece of junk before the collision.

¶ 104    Furthermore, Abrams and Myrick were severely tripped up by the details of their version of the alleged car sale. Specifically, Abrams claimed that he sold the car to Myrick, a mechanic Abrams had known in the neighborhood for a couple of years as "Joe." Abrams testified that Myrick drove a tow truck with a sign advertising Joe's towing. However, when Myrick testified months later, he acknowledged that, at the time of the alleged sale, he no longer had his own towing business, his own truck had quit on him before the incident, and he was using defendant's tow truck, which clearly advertised Miller's towing service. Furthermore, Myrick knew in November 2006 that defendant had been in a pretty bad accident and was arrested, but Myrick did not tell the police at that time that defendant had not stolen the car. Although this case against defendant had been pending for three years, Myrick did not tell anyone, other than defense counsel, about the purported car sale.

¶ 105    In addition, the defense claimed that Wright's inoperable car was towed from the front of her home a few days before the police chase and repaired at some garage, but no receipts or testimony from any mechanic ever corroborated that claim.

¶ 106    The trier of fact is free to accept or reject as much or as little of a witness's testimony as it pleases (*People v. Logan*, 352 Ill. App. 3d 73, 81 (2004)), and the inconsistencies and contradictions in the testimony of Abrams and Myrick rendered their accounts beyond belief. It was just not believable that individuals involved in the legitimate business of buying used cars would consent to a sale without any proof of ownership, transfer of title, bill of sale, or turnover of car keys. In contrast, Detective DeYoung's testimony that the steering wheel was stripped was supported by the evidence that defendant was driving Wright's car, which had just been reported as stolen that morning, without any keys and with the driver's door lock punched out. Even assuming, *arguendo*, some error concerning the trial court's understanding of Wright's testimony about the steering column, I cannot conclude that any such error constituted plain error because the evidence in this case was not close. See *People v. Adams*, 2012 IL 111168, ¶ 22 (in determining whether the closely balanced prong of the plain error test has been met, a reviewing court must make a "commonsense assessment" of the evidence within the context of the circumstances of the individual case).

¶ 107                        B. Inadmissible Hearsay Testimony

¶ 108    Defendant also claims the trial court committed plain and obvious error when it sustained the State's hearsay objection to defense counsel's question to Wright that: "in fact, without commenting or saying anything about what people may have said to you, you came to learn later that the vehicle had actually been sold?" At trial, defense counsel made no offer of proof or further argument concerning this excluded testimony.

¶ 109    The admission of evidence lies within the discretion of the trial court, and the trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). " 'Hearsay evidence is an out-of-court statement offered to prove

the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Caffey*, 205 Ill. 2d 52, 88 (2001) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357 (1997)). Here, the defense clearly sought to introduce the statements that someone made to Wright for the truth of the matter asserted and to support the defense theory that Wright's car was not stolen. This was improper hearsay, and the trial court rightfully excluded it.

¶ 110    Defendant argues that the evidence was an exception to the hearsay rule because it was elicited to establish Wright's state of mind. I disagree. "Statements that indicate the declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable to testify, there is a reasonable probability that the proffered hearsay statements are truthful, and the statements are relevant to a material issue in the case." *Caffey*, 205 Ill. 2d at 91. Here, both Wright and Abrams, the supposed declarant, were available to testify. Furthermore, Abrams' alleged statement would not be admissible to show Wright's state of mind because she was not the declarant. In addition, the evidence, as discussed above, establishes that there was not a reasonable probability that Abrams' out-of-court statement was truthful. Without even an offer of proof, the record does not disclose any reason to regard Abrams' supposed declaration as inherently reliable. Notably, when Abrams testified, he never said when he told Wright that he sold her car or even that he ever told her. Moreover, the excluded testimony was not relevant where Wright clearly testified that she was the sole owner of the car and never gave anyone permission to sell or take her car.

¶ 111    I also disagree with defendant's assertion that the excluded testimony was admissible to rehabilitate or corroborate Abrams' testimony. Abrams testified after Wright, and he was not disclosed in defendant's answer to discovery. Accordingly, the State could not have known what his testimony would be and did not argue or suggest that he recently fabricated his testimony at the time Wright testified. Consequently, there is no merit to defendant's claim that he should have been permitted to preemptively elicit a prior consistent statement to bolster Abrams' testimony through Wright before Abrams even testified.

¶ 112    Defendant argues that the excluded testimony was admissible because the State placed Abrams' credibility at issue during the State's closing argument. Defendant asserts that if Wright's excluded testimony was premature to corroborate Abrams, then trial counsel could have recalled Wright in the defense's case-in-chief to rebut the insinuation that Abrams had fabricated his trial testimony. Defendant, however, did not present this issue in a posttrial motion, and, as discussed above, has failed to meet his burden under the plain error standard. In addition, as discussed below, defendant also had failed to meet his burden to demonstrate ineffective assistance of counsel.

¶ 113    Finally, even if the trial court's ruling was error, it had no effect on the outcome. See *id*. at 92 ("Error in the exclusion of hearsay testimony is harmless where the excluded evidence is merely cumulative of other evidence presented by the parties."). The evidence defendant sought to elicit from Wright–that someone had sold the car–was presented by Abrams and Myrick. Thus, the trial court heard the evidence that defendant wished to elicit but nevertheless found him guilty. As discussed above, defendant has not met his burden of demonstrating that the evidence was so close that the alleged errors severely threatened to tip the scales of justice against him or lead to the conviction of an innocent person.

-21-

¶ 114                    II. Ineffective Assistance of Counsel

¶ 115      Defendant argues his counsel was deficient for failing to move to suppress defendant's statement to Detective DeYoung. Specifically, Detective DeYoung testified that when he confronted defendant outside the crashed car, DeYoung asked defendant why he fled and if the car was stolen. According to DeYoung, defendant answered, "Yes."

¶ 116      According to the record, defendant was not given his *Miranda* warnings before he was asked any such questions and gave that alleged answer. The videotape of this incident did not pick up any audible response by defendant to DeYoung's questions. Moreover, at that point in the recording, defendant, who was lying on the ground, was outside the view of the camera. Specifically, the videotape showed defendant move away from Wright's car and then fall to the ground. DeYoung, with his gun drawn, approached defendant, spoke to him, and ordered him to roll over. Defendant complained about his injury, and DeYoung seemed to use his leg to get defendant to roll over before DeYoung handcuffed him. DeYoung then checked on the occupants of the truck defendant collided with, and other officers and paramedics arrived at the scene. The officers tried to establish defendant's identity and the ownership of the vehicle. DeYoung and other officers went in Wright's car, looked in the glove compartment, and looked at the steering wheel area of the dashboard. When the State played the videotape in its case-in-chief, the sound was off and only a portion of the videotape was played. The defense, however, replayed the videotape for the judge with the sound on.

¶ 117      I cannot find that defendant has met his burden to demonstrate ineffective assistance of counsel under the *Strickland* standard. The record establishes that counsel's performance was not deficient and defendant cannot demonstrate any prejudice ensued from counsel's decision not to move to suppress defendant's statement.

¶ 118      First, defendant does not demonstrate that counsel was deficient for not moving to suppress defendant's statement. Because the videotape did not record any inculpatory response by defendant to DeYoung's questions, suppression of the statement was not clearly defendant's strongest strategy where the defense could use the videotape to argue that no inculpatory statement was ever made. Scrutiny of counsel's performance is highly deferential, and the reviewing court examines the totality of counsel's conduct, not isolated incidents. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. Only the most egregious tactical or strategic blunders bring counsel's representation below *Strickland*'s standard of objective reasonableness. *People v. Reid*, 179 Ill. 2d 297, 310 (1997). " 'Mistakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent ***.' " *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988) (quoting *People v. Stewart*, 104 Ill. 2d 463, 492 (1984)). The record here establishes that counsel provided a vigorous and capable defense.

¶ 119      According to the record, defendant complained to the trial court about the performance of his second appointed counsel and wanted to raise several matters in a *pro se* motion. Appointed counsel explained that several issues defendant sought to raise were irrelevant or

-22-

lacked merit, but she would raise his issue concerning the suppression of his statement in a motion that she would draft herself. Defendant, however, subsequently decided to represent himself, so the proceedings were delayed while he conducted his research. Eventually, defendant hired private counsel, and neither defendant nor private counsel filed a motion to suppress statements even though the bench trial did not start until seven months after private counsel had filed his appearance. These circumstances indicate that both defendant and private counsel were aware of the option to file a motion to suppress.

¶ 120    At the conclusion of the State's case, counsel moved for an acquittal, arguing that the only evidence indicating that defendant knew the car was stolen was the peeled steering column, the punched door lock, and DeYoung's testimony, three years after the event, that defendant said he just stole the car. Counsel argued, however, that DeYoung was impeached by the omission in his police report of any reference to a peeled steering column or punched lock. In addition, counsel argued that the videotape, when played with the sound on, established that "not only was there no such conversation between Deputy DeYoung and [defendant], what's actually going on is the Detective is cursing him, kicking him."

¶ 121    Later, in closing argument, defense counsel argued that defendant was not in possession of a stolen motor vehicle because Abrams sold Wright's car for junk without telling her, the car was fixed and repaired, and the only other evidence to indicate that defendant might have known the car was stolen was the clearly fabricated testimony of Detective DeYoung. Specifically, counsel argued that the videotape impeached DeYoung's testimony that defendant made an inculpatory statement and showed that DeYoung cursed the seriously injured defendant, kicked him, and hollered and pulled at him. Counsel added that DeYoung's assertions about the peeled steering column and punched lock were refuted by the omission of those details from his police report. In addition, no photograph corroborated DeYoung's testimony about the door lock and steering column.

¶ 122    The record indicates that counsel wanted the trial judge to hear, and not just watch, the videotape because counsel wanted to use the videotape to convince the judge that DeYoung had verbally and physically abused the injured defendant and lied about defendant making an inculpatory statement. This strategy was consistent with counsel's strategic decision to forgo filing a motion to suppress the alleged inculpatory statement made by defendant. The decision to bring a motion to suppress is considered trial strategy, and trial counsel enjoys a strong presumption that failure to move to exclude evidence was proper. *People v. Spann*, 332 Ill. App. 3d 425, 432 (2002).

¶ 123    Finally, even if defense counsel had proceeded with and succeeded on defendant's motion, defendant has not demonstrated a reasonable probability that the outcome of the trial would have been different. See *id*. at 432-33. Defendant's statement was not the only evidence offered by the State to suggest that he knew the car had been stolen at the time of his arrest. As discussed above, the evidence in this case was not close, and Abrams and Myrick were not credible witnesses. Furthermore, the State did not argue in closing argument that defendant had confessed to Detective DeYoung that the car was stolen; rather, the State argued that defendant's attempt to flee showed his consciousness of guilt and the facts–no permission from the owner to sell or take her car, the condition of the car when it was recovered 45 minutes after it had been reported stolen (punched out driver's door lock,

absence of any car keys, condition of the steering column), and no title transfer or bill of sale–established that defendant knew he was in possession of a stolen vehicle. There was simply too much evidence of guilt. See *People v. Diaz*, 377 Ill. App. 3d 339, 347-48 (2007) (trial counsel's failure to move to suppress the statement taken in clear violation of the defendant's right to remain silent, even though error, did not constitute ineffective assistance in light of the evidence of the defendant's guilt).

¶ 124    Defendant's statement was not the key piece of evidence against him, and he was not clearly prejudiced by counsel's decision to forgo the motion to suppress. Detective DeYoung's testimony was much more credible than Abram's or Myrick's testimony. Consequently, counsel chose to attack DeYoung's credibility by showing the judge that DeYoung must have lied because the videotape did not record any inculpatory statement by defendant. Because defendant cannot meet the prejudice prong of the *Strickland* standard, his ineffective assistance of counsel claim should be rejected and his conviction affirmed.

¶ 125                                    III. Right to Self-Representation

¶ 126    Defendant claims that the trial court violated his right to represent himself at sentencing. He claims that one "isolated incident" where he refused to appear in court did not constitute grounds for the trial court to terminate his *pro se* representation. Defendant's argument lacks merit.

¶ 127    Although a criminal defendant generally has a constitutional right to represent himself if he makes an unequivocal request to do so, that right is not absolute and may be forfeited if the defendant engages in serious and obstructionist misconduct, or if he cannot make a knowing and intelligent waiver of counsel. *People v. Rohlfs*, 368 Ill. App. 3d 540, 544-45 (2006). On review, the trial court's decision on a defendant's election to represent himself will be reversed only if the court abused its discretion. *People v. Rasho*, 398 Ill. App. 3d 1035, 1041-42 (2010). Here, the trial court correctly terminated defendant's self-representation because his conduct was serious and obstructionist and not merely an isolated incident.

¶ 128    Before trial, defendant was dissatisfied with appointed counsel, so the trial court permitted him to proceed *pro se*. After much delay, defendant reconsidered and counsel was appointed once again. Ultimately, defendant hired private counsel, and the trial commenced. After trial and prior to posttrial motions, defendant told the trial court, on July 23, 2010, that he again wanted to proceed *pro se*. The trial court again permitted defendant to represent himself. Thereafter, defendant requested and received multiple continuances and informed the court that he was trying to obtain evidence to support his theory that he was convicted in a "ghost case." On October 1, 2010, defendant finally argued his motion for a new trial. The lengthy argument, which is set forth in 26 pages in the record, presented multiple issues, including errors in the charging document, violation of defendant's *Miranda* rights, sufficiency of the evidence, ineffective trial counsel, violation of the discovery rules by the State, and improper admission of certain evidence. The trial court denied defendant's motion and tried to proceed to sentencing, but defendant insisted on presenting another motion for a *Krankel* hearing. The trial court relented and the matter was continued.

¶ 129    On October 6, 2010, the case was called for the sentencing hearing but defendant was not present. He was in custody but refused to be brought to court. The trial court ordered that defendant be brought to the courtroom. However, a sheriff's deputy later reported that defendant refused to obey the command to place his hands behind his back in order to be handcuffed and brought from the bullpen to court. When the deputy took defendant's left hand to handcuff him, he fought with the deputies and refused to stand on his feet. Then, defendant claimed that his back gave out on him and he could not walk. The trial court appointed counsel to represent defendant and continued the cause so that a behavior clinical examination could be performed on defendant. On October 13, 2010, the trial court informed defendant that he would not be allowed to represent himself and that counsel was appointed to represent him. Defendant was subsequently found fit for trial and sentencing, but multiple continuances were granted so that appointed counsel could review the case, confer with defendant, or obtain additional information that defendant wanted to present.

¶ 130    At the sentencing hearing on February 25, 2011, defendant objected that his *Krankel* motion had not been heard, but appointed counsel stated that she had thoroughly investigated defendant's *Krankel* claims, did not find any issues of merit, and notified defendant. She also stated that mitigation witnesses had appeared and were ready to testify. Defendant then objected stating that the trial court had forced appointed counsel to represent him. The trial court stated:

"Exactly. Because you are incompetent and you are unable to represent yourself. And because of your actions, which I have dealt with throughout this whole proceeding in the many, many, many months previous to this, sir, we are done with it. I gave you all the rope you could have, sir, and you have used it up by your actions and what you have done in the past, sir. And I have a completed record throughout this matter here. And as of recently, I have given you the opportunity to represent yourself, but because of your actions of doing things, amongst other thing, having not come into the courtroom as well as acting up with the deputy sheriffs in which I was forced to have you examined again by the psychiatrist and the forensic institute."

¶ 131    The trial court told defendant that he could be excused from the sentencing hearing if he wished and return for allocution. Defendant elected to leave the courtroom. After the presentation of mitigation evidence and argument, defendant returned to the courtroom and addressed the trial court. Based on defendant's criminal background, he was subject to a mandatory Class X sentence of 6- to 30-years' imprisonment for this Class 1 felony offense of aggravated possession of a motor vehicle. Furthermore, the retail theft charge he received while out on bond in this matter was an aggravating factor. The trial court sentenced defendant to a 19-year prison term.

¶ 132    The record rebuts defendant's claim that the trial court violated his constitutional right to self-representation after merely an "isolated," "one-time non-appearance in court." The record in this case shows that defendant engaged in obstructionist conduct by filing ill-conceived motions and disregarding the trial court's admonitions to talk with his attorney and to speak through his attorney. Defendant's posttrial behavior attempted to obstruct the orderly progression of this cause through the sentencing phase, and the trial court properly terminated defendant's self-representation due to his disruptive and defiant behavior and

delay tactics, which were depriving him of competent representation in a very serious situation involving mandatory Class X sentencing. I cannot find that the trial court abused its discretion in terminating defendant's self-representation.